```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF PENNSYLVANIA
```

MARGARET SOBEK BARBISH and         )
ALFRED BARBISH, husband and wife,  )
                                   )
          Plaintiffs,              )
                                   )
     vs.                           ) Civil Action No. 01-233
                                   )
AMERICAN PROPERTY MANAGEMENT       )
CORPORATION, AP/APH-PITTSBURGH,    )
L.P., RADISSON HOTEL GREENTREE,    )
FORMERLY GREENTREE MARRIOTT,       )
                                   )
          Defendants.              )

**MEMORANDUM**

Pending before the Court is a motion for a new trial by Plaintiff Margaret Barbish[1] (Docket No. 66). For the reasons discussed below, Plaintiff's Motion is denied.

**I.   BACKGROUND**

The facts giving rise to this case are well-known to the parties and will not be reiterated in detail here. Briefly stated, Margaret Barbish was employed as Director of Human Resources for the Green Tree Marriott Hotel ("Marriott") at the time the hotel was purchased by Defendant American Property

---

[1] At trial, the jury found in favor of Defendants on the claim of co-plaintiff, Alfred Barbish, for loss of consortium. Plaintiffs do not raise any issues with regard to this decision; therefore, for sake of simplicity, we shall refer herein to "Plaintiff," meaning only Ms. Barbish. In addition, we shall refer to Plaintiff as "Ms. Barbish," although at trial and in the pleadings she is sometimes referred to as "Mrs. Sobek-Barbish" or "Peg Sobek."

1

Management Corporation ("APMC") in August 1999. As part of the purchase agreement between APMC and Marriott's parent company, Interstate Hotels Corporation ("Interstate"), the salaries of hotel staff who were expected to continue with APMC (including Ms. Barbish) were not to be increased between signing of the purchase agreement and closing of the sale. Nevertheless, the Marriott hotel manager increased Ms. Barbish's annual salary from $72,582 to $76,211 the day before the transition took place.

Soon after the change in ownership, Marriott's new general manager, Roland Sardaczuk, discovered the salary increase and reduced Ms. Barbish's salary to the amount she received prior to the sale. In September 1999, Ms. Barbish informed the hotel payroll department that her salary check did not include the car allowance she previously received from Interstate. Although she did not submit any paperwork to support this claim, the payroll office confirmed that she had indeed been receiving an annual allowance of $7,440 and increased her paycheck accordingly.

Several months later, when Mr. Sardaczuk noticed that the human resources department was over budget, he discovered the increase in Ms. Barbish's salary as a result of the car allowance. He met with her and told her that she would have to forego the allowance; she protested that she was entitled to it because it had been in place prior to the sale. The dispute was referred to APMC managers at corporate headquarters who demanded

that she return to her original salary of $72,582, give up the car allowance, and repay $5,108, the amount she had been overpaid after APMC acquired the hotel.  When Ms. Barbish objected, APMC management said they had "lost confidence in her" and asked for her resignation.  After a few days to consider, Plaintiff advised APMC that she would not resign.  Her employment was terminated that day on the grounds that she had given herself an unauthorized pay increase in the form of the car allowance.

    Ms. Barbish filed suit, claiming that Defendants had violated the Age Discrimination in Employment Act, 29, U.S.C. § 621 *et seq.* (ADEA), the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.* ("PHRA"), and the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1 *et seq.* ("WPCL.")  She also brought common law claims of intentional infliction of emotional distress and defamation.  The latter claim was based on her allegation that shortly after she was fired in April 2000, Mr. Sardaczuk had told hotel staff she was let go because she was a thief as shown by the fact she had given herself an unauthorized pay increase.

    Defendants moved for summary judgment on all claims. Plaintiff failed to respond to their motion with respect to the WPCL and intentional infliction of emotional distress claims, and therefore the Court entered summary judgment in favor of Defendants on those two counts without discussion.  (Docket No.

34.)  Summary judgment was denied with regard to Plaintiff's ADEA, PHRA, and defamation claims and her husband's loss of consortium claim.  (Id.)

On January 26, 2005, following a five-day trial, the jury returned a verdict in favor of Plaintiff with regard to her defamation claim only.  As stated on the Special Verdict Form, the jury affirmatively found

> by a preponderance of the evidence that [Defendants'] employees . . . published defamatory statements to third persons about plaintiff, . . . which statements resulted in "actual harm" to plaintiff.

(Special Verdict Form, Docket No. 63, question 6.)

The jury awarded Ms. Barbish $14,000 as "damages directly resulting from publication of defamatory statements about her." (Special Verdict Form, question 7.)  However, it did not find Defendants' employees acted with "actual malice" in making those derogatory statements and so did not award any punitive damages. (Special Verdict Form, Docket No. 64, questions 1 and 2.)

On February 10, 2005, Plaintiff filed a Motion for a New Trial.  In her motion, Ms. Barbish raises three arguments: (1) the damages awarded by the jury at trial are insufficient and/or against the clear weight of the evidence; (2) the inadequate award was the result of jury confusion or compromise; and (3) the inadequate award resulted from improper argument of Defendants' counsel at closing.  She does not argue with the jury's decision regarding punitive damages.  We have considered each of

Plaintiff's arguments in turn and find none of them persuasive.

**II.   STANDARD FOR GRANTING A MOTION FOR A NEW TRIAL**

In pertinent part, Federal Rule of Civil Procedure 59(a) provides:

> A new trial may be granted to all or any of the parties and on all or part of the issues in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States.

Fed. R. Civ. P. 59(a).

The Third Circuit has repeatedly held that motions for a new trial arguing that the verdict is against the weight of the evidence "are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience."  Grazier v. City of Phila., 328 F.3d 120, 128 (3d Cir. 2003), *quoting* Williamson v. Conrail, 926 F.2d 1344, 1353 (3d Cir. 1991); *see also* Greenleaf v. Garlock, Inc., 174 F.3d 352, 366 (3d Cir. 1999), and Sheridan v. E.I. Dupont de Nemours & Co., 100 F.3d 1061, 1076 (3d Cir. 1996).  This "stringent standard" is established

> to ensure that a district court does not substitute its judgment of the facts and the credibility of the witnesses for that of the jury.  Such an action effects a denigration of the jury system and to the extent that new trials are granted the judge takes over, if he does not usurp, the prime function of the jury as the trier of facts.

Sheridan, id. (internal quotation omitted).

5

The same "shocks our conscience" standard applies when considering the adequacy of a jury's damages award. <u>Tormenia v. First Investors Realty Co., Inc.</u>, 251 F.3d 128, 138 (3d Cir. 2000) ("The dispositive legal question is whether, given the evidence presented, the jury's award was so irrational as to shock the judicial conscience.")  Granting a new trial because the plaintiff claims the damages were insufficient is appropriate only if damages awarded by the jury were an amount "substantially less than was unquestionably proven by plaintiff's uncontradicted and undisputed evidence." <u>Semper v. Santos</u>, 845 F.2d 1233, 1236 (3d Cir. 1988) (internal quotation omitted).  "Damages assessed by a jury are not to be set aside . . . unless the jury's award indicates caprice or mistake or clear abuse of its fact-finding discretion or the clear influence of partiality, corruption, passion, prejudice, or a misconception of the law." <u>Tann v. Service Distributors, Inc.</u>, CA No. 70-1168, 1972 U.S. Dist. LEXIS 11789, *11 (E.D. Pa. Sept. 29, 1972).

The decision to grant a new trial is "confided almost entirely" to the discretion of the court.  *See* <u>Allied Chemical Corp. v. Daiflon, Inc.</u>, 449 U.S. 33, 36 (1980); <u>American Bearing Co. v. Litton Industries, Inc.</u>, 729 F.2d 943, 948 (3d Cir. 1984), *cert. denied*, 469 U.S. 854 (1984).  In determining whether to grant a motion for a new trial, a court is not compelled to view the evidence in the light most favorable to the verdict winner.

Bullen v. Chaffinch, 336 F. Supp.2d 342, 347 (D. Del. 2004).  The burden of proof on a motion for a new trial is on the movant. Graves v. Women's Christian Alliance, CA 01-CV-5077, 2003 U.S. Dist. LEXIS 12154, *4 (E.D. Pa. July 3, 2003).

### III. LEGAL ANALYSIS

In moving for a new trial on damages, Plaintiff first argues that the jury must have disregarded or misunderstood the Court's instructions about how to calculate an award for damages. (Memorandum of Law in Support of Plaintiffs' Motion for a New Trial, Docket No. 68, "Plf.'s Memo," at 2-5.)  The instruction given to the jury stated:

> If you find for Mrs. Sobek-Barbish on her claim for defamation, she is entitled to be fairly and adequately compensated for all harm she suffered as a result of the false and defamatory communication published by employees of the defendants.  The injuries for which you may compensate Mrs. Sobek-Barbish by an award of damages include:
>
> (1) the actual harm to Mrs. Sobek-Barbish's reputation that you find resulted from the defendants' employees' conduct;
>
> (2) the emotional distress, mental anguish, and humiliation that you find [Plaintiff] suffered as the result of the defendants' employees' conduct, as well as the bodily harm to Mrs. Sobek-Barbish that you find was caused by such suffering; and
>
> (3) any other special injuries that you find Mrs. Sobek-Barbish suffered as a result of the defendants' employees' act.

(Plf.'s Memo at 2-3, citing Jury Instructions at 26.)

Plaintiff argues that at trial, Defendants were unable to rebut credible testimony that she had suffered emotional distress, mental anguish, humiliation and special injuries.  She testified that following Defendants' publication of defamatory statements about her, she sought psychological counseling over the course of two years for which she paid $14,000.  This was the exact amount the jury awarded her as damages.  Plaintiff interprets the award equal to the cost of her psychological counseling as "objective proof that the jury found [she] endured mental distress and anguish as a result of the Defendants' defamatory statements."  (Plf.'s Memo at 3.)  However, the fact that the jury limited the award to her counseling expenses without an additional amount for the "actual harm" to her reputation and/or for her "actual and appreciable mental distress" reflects the jury's disregard or misunderstanding of the Court's instructions about how to assess damages.  The lack of compensation for these intangible losses is therefore contrary to the weight of the evidence and "should not be sanctioned."  (Id. at 4.)

The instruction on defamation – given by the Court without objection – stated that if the jury found Defendants had defamed Ms. Barbish, she was entitled to "fair and adequate" compensation for "all harm she suffered" as a result.  The instructions direct that the jury "may" compensate Plaintiff for (1) actual harm to

her reputation, (2) emotional distress, mental anguish, and humiliation that she suffered and any consequential bodily harm; and (3) "any other special injuries that you find Mrs. Sobek-Barbish suffered as a result of the defendants' employees' act." Nothing in the instructions, and indeed, nothing in Pennsylvania law,[2] requires that if the jury found Ms. Barbish had been defamed, it was compelled to award damages for all three of the delineated types of harm. Based on the word "may," the jury was entitled to construe the instruction to award damages for any of those categories as permissive rather than mandatory. While we

---

[2] The Court does not find persuasive Plaintiff's reliance on Brown v. Richard D. Wacholz, Inc., 467 F.2d 18 (10th Cir. 1972) which relies on Colorado law. In that case, the plaintiff – who already suffered from the effects of polio – slipped and fell on the icy sidewalk in front of the defendant's restaurant. He underwent major surgery to repair a fracture of his femur, which resulted in severe shortening of his leg which in turn exacerbated his physical disability. After the surgery, Brown could no longer turn his foot, drive or perform other functions. The jury awarded him exactly the amount of his out-of-pocket medical expenses. The district court denied the plaintiff's motion for a new trial in which he claimed that the damages awarded were inadequate. Id. at 19. On appeal, the Tenth Circuit reversed, holding that the district court had abused its discretion by denying the motion. The appeals court noted that under Colorado law, the jury could not limit an award to actual medical expenses when the undisputed evidence established both pain and suffering and permanent disability. Brown, 467 F.2d at 20 (relying on Colorado state supreme court cases). The court concluded that "Where, as here, the plaintiff sustained a severe injury in which the damages were substantial, the conclusion must be that the jury disregarded its fact-finding function" and, consequently, the plaintiff was entitled to a new trial to address the damages issue. Id. at 21. The comparison of Brown's pain and suffering from a permanent disability with substantial damages to the relatively short-term emotional distress and harm to Ms. Barbish's reputation (if any) as a result of the defamation is too tenuous for the Court to accept. *See* Semper, 845 F.2d at 1236, reaching a similar conclusion in its comparison of Brown with the facts of the case at hand.

9

decline to second-guess the reasoning of the jury, it is not inconceivable that the jurors concluded that the emotional distress, mental anguish and humiliation suffered by Ms. Barbish were fairly and adequately compensated by, in effect, requiring Defendant to pay her psychological counseling bills.

Furthermore, the jury may not have been persuaded that Ms. Barbish suffered actual harm to her reputation.  She testified that she felt her "reputation was ruined" when she learned about Mr. Saduczak's remarks.  (Brief for Defendants in Opposition to Plaintiffs' Motion for New Trial, Docket No. 69, "Defs.' Brief," Exhibit C, Excerpt from Trial Transcript, January 12, 2005, at 79-80.)  She recounted that in one conversation inquiring about a job with Interstate, she felt the person with whom she spoke "had probably heard about this and . . . so she wasn't interested in speaking to me."  (Id. at 82.)  She presented no evidence that she did not receive job interviews or her applications were rejected because the defamatory statements had been disseminated beyond the few hotel employees to whom Mr. Sardaczuk spoke.

To recover damages for emotional distress, a plaintiff must show "a reasonable probability rather than a mere possibility" that the distress arose from the events on which her claim is based.  See Spence v. Bd. of Ed., 806 F.2d 1198, 1201 (3d Cir. 1986).  Ms. Barbish testified that immediately after she was fired (that is, before she learned of Mr. Sardaczuk's comments),

she had "never been so devastated, so shocked, so depressed." (Defs.' Brief, Exh. C, at 78.)  Thus, the jury may have believed that some part of her emotional distress – her profound devastation, shock and depression – arose from the loss of her job, not only the defamation.  When she learned about Mr. Sardaczuk's remarks approximately one week later, she contacted a family therapist.  With his help, she was able to begin looking for a new job, "maybe a couple weeks later."  (Id. at 79-80.) From this testimony, the jury may have concluded that although she underwent psychological counseling for two years, her emotional distress was not so severe that additional compensation over and above payment for those services was necessary to compensate her for "all the harm" she suffered from Defendant's defamatory acts.

A jury is in the best position to determine credibility of witnesses and is under no obligation to accept even undisputed testimony it finds unconvincing.  Semper, 845 F.2d at 1237.  Had the jury returned with an award substantially less than Ms. Barbish's medical bills, it would be fair to assume it had failed to follow the instruction for calculating damages, but that is not the case here.  As a result, we cannot find that the amount awarded, although disappointing to Plaintiff, is so inadequate as to shock the conscience or to reflect a miscarriage of justice.

Plaintiff's second argument is that the inadequate award is

the product of jury confusion or "inappropriate compromise." That is, at trial, Defendants disputed their liability for defamation but did not offer evidence contradicting Mrs. Barbish's claims of emotional distress and anguish. According to Plaintiff, the jury could have arrived at an award exactly equal to her counseling expenses only if it "improperly interwove the contested issue of defendants' liability" into its damages calculation and thus, "inappropriately tainted the damages award with elements of compromise." (Plf.'s Memo at 5-7.)

A compromise verdict in a civil case is generally denoted by the jury finding the defendant liable but awarding the plaintiff damages grossly out of proportion to his proven losses. See, for example, Lucas v. American Mfg. Co., 630 F.2d 291, 292-94 (5th Cir. 1980) (damages less than half of the plaintiff's stipulated medical expenses and wage loss); Hatfield v. Seaboard A.L.R. Co., 396 F.2d 721, 723-24 (5th Cir. 1968) (damages of $1.00 awarded despite plaintiff's uncontested special damages of almost $3,000); Pryer v. C.O. 3 Slavic, 251 F.3d 448 (3d Cir. 2000) (award of $1.00 "not easy to reconcile with uncontested evidence of physical injuries.")

Relevant factors in determining whether a verdict is the result of impermissible compromise include a grossly inadequate damages award, a close question of liability, and an "odd chronology" of jury deliberations. Carter v. Moore, 165 F.3d

12

1071, 1083 (7th Cir. 1998) (internal quotation omitted); *see also* Pagan v. Shoney's, Inc., 931 F.2d 334, 339-40 (5th Cir. 1991), adding to those already listed such factors as evidence of the jury's confusion; how long it deliberated; whether the jury requested additional instructions; and whether the jury attempted to qualify its award in any way.  An inadequate or nominal damage award standing alone is not enough to show a compromise verdict. Pryer, 251 F.3d at 462 (Mansmann, J., concurring in part and dissenting in part.)

We cannot conclude, as explained above, that the damages award here was "grossly out of proportion" to the evidence of harm presented by Plaintiff at trial.  Nothing in the record indicates that the jury was closely divided on the question of Defendants' liability for any issue in the case, including the defamation.  *See* Diamond D. Enterprises USA, Inc. v. Steinsvaag, 979 F.2d 14, 17 (2d Cir. 1992), *cert. denied*, 508 U.S. 951 (1993), identifying as evidence of a closely divided jury such things as advising the court it was hopelessly deadlocked only to reach a unanimous decision shortly thereafter; explicitly asking to review testimony related only to liability; or deliberating several days solely on the liability issue.

The jury here deliberated approximately three hours and fifteen minutes on the question of liability on all Ms. Barbish's claims before returning a verdict in favor of Plaintiff and the

damage award for defamation.  The following day, it heard argument and received instruction on the question of "actual malice" which would have entitled Plaintiff to punitive damages. The jury deliberated less than an hour before returning a verdict indicating it found no such malice.  Only a single note was sent out by the jury, requesting clarification of whether it had to find that "one" or "all members" of Defendant's upper management had defamed Ms. Barbish, but the verdict was returned before it received a response to this question.  Other than Plaintiff's speculation, nothing in the record demonstrates or suggests a compromise verdict, i.e., there is no evidence of a closely divided jury, jury confusion about the law of defamation, oddities in its deliberations, or unduly extended deliberations.[3]

Finally, Plaintiff argues that the inadequate award was the result of improper statements made during Defendants' closing argument.  (Plf.'s Memo at 8-11.)  Prior to trial, defense counsel urged the Court to include in its charge to the jury an

---

[3] Again, the Court is not persuaded by the cases relied upon by Plaintiff in this portion of her memorandum, Hatfield, *supra*, and Feinberg v. Mathai, CA Nos. 44370 and 44136, 1973 U.S. Dist. LEXIS 12722 (E.D. Pa. July 13, 1973).  As explained in Vizzini v. Ford Motor Co., 569 F.2d 754, 760-762 (3d Cir. 1977), also cited by Plaintiff, in Hatfield, the liability issue "was close and hotly contested;" there was evidence of jury confusion on the question of contributory negligence; and the plaintiff received only $1.00 as nominal damages despite uncontroverted evidence of severe facial injuries plus medical expenses and lost wages of almost $3,000.  Similarly, in Feinberg, the jury returned a damages award of $2,340 for the death of plaintiff's son in an accident and spent far more time in arriving at this amount than it did determining liability.  Thus, both Hatfield and Feinberg showed indicia of a compromise verdict which are not apparent here.

explanation of the defense of conditional privilege to the defamation claim, pursuant to Restatement (2d) of Torts, §§ 593 and 594. The Court did not do so and the jury was not charged as to this defense. However, during his closing argument, defense counsel stated:

> You also recall the setting in which [Mr. Sardaczuk] made those alleged comments was one in which rumors concerning [Ms. Barbish's] termination were rampant throughout the hotel. As .. . Mr. Engel testified, there was a buzz going through the hotel as to those reasons. It was in the context of this rumor mill about [Plaintiff's] departure that Roland Sardaczuk testified that in visiting with three or four managers to bid them goodbye before his departure, . . . he believes he told them that the reason Peg was discharged was that she had given herself an unauthorized pay increase.
>
> The setting in which those comments were made is important **because under the law of defamation, an employer may comment on the reason for an employee's discharge if he has a legitimate reason in doing so and he won't be liable for defamation.**
>
> Here, the buzz of rumors going around the hotel fully justified what Mr. Sardaczuk told those three or four people.

(Plf.'s Memo at 8 and Exhibit A thereto, Trial Transcript of January 26, 2005, at 26-27, emphasis in Memo.)

Plaintiff contends that this "justification" argument "interposed the concept of conditional privilege into the jury's evaluation of the libel action, despite the fact that the Court refused to charge the jury on this defense." Although Plaintiff's counsel immediately objected to these statements in a sidebar conference, the Court did not provide a corrective

instruction to the jurors that they should not rely on "justification" as a defense to the defamation.  Thus, "there is a danger" that the jury relied on that argument, or that it confused the "justification" defense with other defenses offered by Defendants.  Plaintiff concludes that "it is evident that the jury inappropriately concluded that the concept of 'justification' provided at least a partial defense to the defendants' liability for the defamatory statements," and that this "mistaken conclusion" could have been a factor in the jury failing to follow the Court's instructions on damages or reaching a compromise verdict.  (Plf.'s Memo at 10-11.)

When a motion for a new trial is based on allegedly improper remarks made by counsel during argument, the court must determine if the remarks were so prejudicial they affected the fairness of the trial and thereby caused manifest injustice.  Corbett v. Borandi, 375 F.2d 265, 270 (3d Cir. 1967).  A new trial may be granted only where the improper remarks "made it reasonably probable that the verdict was influenced by prejudicial statements."  Fineman v. Armstrong World Indus. Inc., 980 F.2d 171, 207 (3d Cir. 1992) (internal citation omitted); *see also* Greate Bay Hotel and Casino v. Tose, 34 F.3d 1227, 1236 (3d Cir. 1994) (the court must find that it is "reasonably probable" that the challenged conduct had a "significant influence" on the jury's deliberations.)  The court's conclusion as to the effect

of the allegedly prejudicial statements is not to be based on isolated statements taken out of context, but on a comprehensive view of the entire trial.  "Not all improper remarks will engender sufficient prejudice to mandate the granting of a new trial."  Fineman, 980 F.2d at 207.

    We need not dwell long on this issue.  As Defendants point out, the statements made by counsel in his closing argument accurately reflect the law of Pennsylvania on the conditional privilege defense and thus could not have misled the jury as to the law.  (Defs.' Brief at 9.)  The quotation above appears to be the only mention by counsel of this defense in his closing remarks.  Assuming the jurors understood from this brief mention that conditional privilege is a defense to defamation, they certainly were not persuaded by that argument, as can be seen from the fact that they returned a verdict in favor of Plaintiff.  As to the argument that the jury mistakenly factored this partial defense into its damages calculation, as discussed above, we cannot conclude that the jury failed to follow the Court's instructions on calculating damages or awarded damages of $14,000 as a "compromise verdict."

Plaintiff's Motion for a New Trial is denied. An appropriate Order follows.

_____
William L. Standish
United States District Judge


cc:	Thomas V. Gebler, Jr., Esq.
	Robb, Leonard & Mulvihill
	2300 One Mellon Bank Building
	Pittsburgh, PA 15219

	Paul A. Manion, Esq.
	Manion, McDonough & Lucas
	600 Grant Street
	Suite 882
	Pittsburgh, PA 15219